IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: Fifth Third Early Access Cash Advance Litigation | ) ) ) ) ) ) ) ) ) ) | CASE NO. 1:12-cv-00851-MRB<br><br>DISTRICT JUDGE MICHAEL R. BARRETT<br><br>**<u>CONSOLIDATED CLASS ACTION</u>**<br>**<u>AMENDED COMPLAINT</u>** |

## <u>COMPLAINT</u>

Plaintiffs Lyn Adanich, Donald Adanich, Janet Fyock, Brian Harrison, Diana Horn, William Klopfenstein, Lori Laskaris, Daniel Laskaris and Adam McKinney (collectively, "Plaintiffs") allege the following based on personal knowledge as to allegations regarding Plaintiffs and on information and belief as to other allegations:

## <u>INTRODUCTION AND GENERAL ALLEGATIONS</u>

1.     This is an action for monetary damages, restitution, declaratory and injunctive relief against Defendant Fifth Third Bank ("Defendant" or "Fifth Third"), for misrepresenting the annual percentage interest rate ("APR") associated with Early Access payday loans and for charging usurious interest rates in violation of federal law and state law on those loans.

2.     Fifth Third is a state-chartered, federally insured bank with branches located throughout the United States, including Florida, Illinois, Indiana, Kentucky, Michigan, Ohio and Tennessee.

3.     Payday loans—small loans due on the borrower's next "payday"—have a long and sordid history.  For centuries, unscrupulous lenders have been accused of taking advantage of working people desperate to make ends meet by offering such loans at usurious and unconscionable rates.  Payday lenders have been perceived as operating on the shadowy fringe of the mainstream financial system.

4.     Fifth Third is one of a tiny number of mainstream financial institutions to offer short-term, closed-ended payday loans to its checking account customers ("Early Access Loans").

5.     What distinguishes Fifth Third's Early Access Loans from those made by storefront payday lenders is the direct and automatic access Fifth Third has to its customers' checking accounts for repayment of Early Access Loans.  Fifth Third deposits the Early Access Loan amount directly into the customer's checking account and then repays itself the loan amount, plus interest, directly from the customer's next incoming direct deposit in excess of $100.

6.     If direct deposits are not sufficient to repay the loan within thirty-five (35) days, Fifth Third repays itself anyway, even if it overdraws the customer's account.

7.     Fifth Third prominently represents an Annual Percentage Rate ("APR") of 120% for every Early Access Loan in the Early Access Program's Terms & Conditions ("Terms & Conditions") and in customers' checking account statements.

8.      That 120% APR disclosure is false and misleading. In fact, Early Access Loans carry a 120% APR only when repaid in 30 days. However, Fifth Third repays itself for the vast majority of Early Access Loans well prior to 30 days—resulting in APRs exponentially higher than 120%.

9.      Fifth Third knows the vast majority of Early Access Loans are repaid prior to 30 days and Fifth Third therefore knows the vast majority of Early Access Loans carry an APR far higher than 120%–including Early Access Loans with APRs of 500%, 1,000%, 1,800% or more. But the bank discloses none of this to its customers.

10.     In short, Class members' Early Access Loans carried multiple APRs, yet Fifth Third disclosed only the <u>lowest possible</u> APR.

11.     Fifth Third's deceptive APR disclosures prevent consumers from accurately comparing the relative cost of Early Access Loans with other forms of credit.

12.     Moreover, the APR that Fifth Third charges on Early Access Loans is far in excess of the permissible interest rate allowed by federal and state law.

**<u>PARTIES</u>**

13.     Plaintiffs Lyn Adanich and Donald Adanich are citizens of Ohio.

14.     Plaintiff Janet Fyock is a citizen of Illinois.

15.     Plaintiff Brian Harrison is a citizen of Tennessee.

16.     Plaintiff Diana Horn is a citizen of Kentucky.

17.     Plaintiff William Klopfenstein is a citizen of Michigan.

18.     Plaintiffs Lori Laskaris and Daniel Laskaris are citizens of Florida.

19.     Plaintiff Adam McKinney is a citizen of Indiana.

3

20.     Defendant Fifth Third Bank is a state-chartered, federally insured bank, headquartered in Ohio, with branches located in Florida, Illinois, Indiana, Kentucky, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, Tennessee and West Virginia.

## JURISDICTION AND VENUE

21.     Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

22.     The Court has subject matter jurisdiction over this matter under 28 U.S.C. 1332(d)(2) and (6), as amended by the Class Action Fairness Act of 2005, because this matter was brought as a class action, the aggregate claims of the putative Class members exceed $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a different state than Fifth Third.

23.     The Court has subject matter jurisdiction over Plaintiffs' claims arising under 12 U.S.C. 1831(d), pursuant to 28 U.S.C. 1331.

24.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367, because Plaintiffs' state law claims arise out of the same transaction or occurrence as their claims under 12 U.S.C. 1831(d)—namely, Fifth Third's charging excessive interest in connection with its Early Access Program and misrepresenting the interest rates charged in connection with Early Access Loans.

25.     Venue is proper in this Court pursuant to 28 U.S.C. 1391, because Fifth Third is subject to personal jurisdiction here and regularly conducts business in this District. Additionally, a substantial part of the events or omissions giving rise to the claims asserted occurred and continue to occur in this district.

## FACTS

## Common Factual Allegations as to the Proposed Class and Plaintiffs

## Fifth Third's False Disclosures Regarding Early Access Loans APRs.

26.    Fifth Third offers Early Access Loans to its customers residing in, *inter alia*, Ohio, Kentucky, Michigan, Illinois, Indiana, Tennessee, Missouri and Florida.

27.    The Terms & Conditions governing Early Access Loans and in effect at all times material to this Complaint are attached as Exhibit A.

28.    The Early Access Terms & Conditions are presented to its customers on a "take it or leave it" basis, and are drafted and imposed by Fifth Third, which was the party of vastly superior bargaining strength and they thus constitute agreements of adhesion.

29.    In both the Early Access Terms & Conditions and on monthly bank statements provided to customers, Fifth Third states that the APR for Early Access Loans is, in all cases, 120%.  The Early Access Terms & Conditions state plainly:

> The transaction fee is $1 for every $10 borrowed.  **This equates to an Annual Percentage Rate (APR) of 120%** (emphasis added).

30.    The Early Access Terms & Conditions also state in bold print:

> **INTEREST RATE AND FEES**
> **Annual Percentage Rate (APR) for 120%**

31.    The Early Access Terms & Conditions also state:

> [The] transaction fee will be reflected as an Annual Percentage Rate (APR) in the Fifth Third Early Access section of your checking account statement.  The APR is a measure of the cost of credit, expressed as a yearly rate.

32.    As alleged herein, these contract Terms & Conditions are misleading and are violated by Third Fifth in most every case because the APR for Early Access Loans almost always exceeds 120%.

5

33.     Fifth Third knew Early Access Loans were almost always repaid prior to 30 days. However, Fifth Third did not incorporate this reasonably available information into its customer disclosures.  Rather, Fifth Third's disclosures are pervaded by knowingly false assumption that loans would be repaid only after 30 days.

34.     The Terms & Conditions state that "[t]he Annual Percentage Rate is calculated by dividing the transaction fee by the Advance amount and multiplying the quotient by the number of statement cycles within a year.  For example, $100 Advance with a $10 transaction fee = $10/$100 = 0.1% X 12 cycles = 120% APR."

35.      However, the APR equation Fifth Third provided was arbitrary at best and intentionally deceptive at worst.  That equation is a misleading tautology that cannot be used to calculate APRs on Early Access Loans repaid prior to 30 days from issuance.

36.     Despite the contractual promise noted at paragraph 32, *supra*, to reflect the Early Access Loan transaction fee on borrowers' bank statements, Fifth Third falsely states on consumers' checking account statements that the APR for Early Access Loans is 120%—even after an Early Access Loan has been repaid and even after Fifth Third could easily calculate and provide the actual APR associated with an Early Access Loan.  A copy of an account statement noting the 120% APR is attached as Exhibit B.

37.     In small print, the account statements state that "The Annual Percentage Rate (APR) is calculated by dividing the total Early Access Advance Fees for the billing cycle by the total amount of advances during the billing cycle ($10/$100 = 0.1) and multiplying the quotient by the number of billing cycles in a year (0.1 x 12 monthly billing cycles) equals 120%."

38.     This is even more deceptive than the comparable disclosure in the Terms & Conditions because at the time the account statement is issued, the vast majority of Early Access Loans have already been repaid in a time period less than a "billing cycle."

39.     Nowhere in the Terms & Conditions did Fifth Third disclose to its customers that the APR for Early Access Loans would be in excess of the represented 120% APR if the loan was repaid in less than 30 days.

40.     Fifth Third had access to its customers' direct deposit histories and was aware that an APR in excess of the represented 120% was exceedingly likely, or even certain, to be charged to the Early Access Loans received by many of its customers.

41.     Fifth Third willfully and knowingly misled customers that Early Access Loans would carry an APR of 120%.

### Early Access Loans Are a Form of Closed-Ended Credit.

42.     Early Access Loans are a form of closed-ended credit.

43.     Unlike open-ended credit lines (such as consumer credit card), each Early Access Loan is an independent obligation that requires new fees and an independent eligibility determination by Fifth Third.

44.     Moreover, Early Access Loans feature no interest charges that are computed periodically on an outstanding unpaid balance. Rather, the interest charges are computed up-front, one time only. In short, Early Access Loans are wholly different from open-ended credit like credit cards, where interest is applied to unpaid balances after the debt is incurred.

45.     Nor is an Early Access Loan a "line of credit," as each loan requires a new eligibility determination by Fifth Third and new, up-front interest charges.

46.     Indeed, eligibility for Early Access Loans can be revoked at any time by Fifth Third. Fifth Third specifies that it can reduce or eliminate access to Early Access Loans at any

time, for any reason.  According to the Terms & Conditions, "[t]he Bank reserves the right, at any time…to modify your Credit Limit, including reducing the Credit Limit to $0, based on your use of Fifth Third Early Access, your handling of the funds in your Associated Checking Account and other factors, at the Bank's sole discretion."

47.    Fifth Third does not contemplate that consumers will repeatedly request Early Access Loans.  Indeed, the Terms & Conditions state that Early Access Loans are to be used only for emergencies.  In bold print, the Terms & Conditions state that **"[w]e do not recommend continued use of the service."**

### Fifth Third Conditions the Extension of Early Access Credit on Borrowers' Consent to Electronic Repayment.

48.    It is impossible for a consumer to receive an Early Access Loan without <u>first</u> agreeing to electronic repayment of that loan via direct debit from a consumer's checking account.

49.    According to the Terms & Conditions, "[a]ny Advance and related transaction fees will automatically be deducted by the Bank from your Associated Checking Account at the time of your next direct deposit of $100 or more."

50.    In order to receive an Early Access Loan, customers agree to allow ongoing electronic transfer repayments according to the substantially regular schedule of the customer's next direct deposit.  These occur for the vast majority of Early Access Loan consumers like clockwork as wage direct deposits are posted.

51.    For example, Plaintiffs had bimonthly direct deposits that were credited to their accounts at regular intervals.  Those direct deposits were used by Fifth Third to repay Plaintiffs' Early Access Loans.

52.     While it is possible for borrowers to make manual payments <u>after</u> the loan is initiated, there is no possible way for a consumer to receive an Early Access Loan without <u>first</u> agreeing to electronic repayment.

### Facts as to Plaintiffs Lyn Adanich and Donald Adanich

53.     Plaintiffs Lyn and Donald Adanich ("the Adaniches") hold a checking account with Fifth Third.

54.     The Adaniches have always paid back the Early Access Loans in less than thirty (30) days, and sometimes within one week.

55.     Since each and every one of the Adaniches' Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than (30) thirty days, the Adaniches were assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, the Adaniches were charged interest rates well in excess of the amount disclosed by Fifth Third.

56.     Below are examples of specific instances where the Adaniches' Early Access Loans featured an APR greater than 120%:

a.     On April 25, 2012, the Adaniches borrowed an Early Access Loan in the amount of $300.  Six days later, on May 1, 2012, the Adaniches received a direct deposit and Fifth Third debited $325.19[1] to repay that loan.  This resulted in an APR of approximately 603% for the Early Access Loan.  The monthly account statement issued by Fifth Third to the Adaniches states, incorrectly, that the APR for this transaction was 120%.

---

[1] The remaining $4.81 was repaid from a direct deposit received May 10, 2012. The interest rate stated in this paragraph is calculated accordingly.

9

b.      On May 18, 2012, the Adaniches borrowed an Early Access Loan in the amount of $200.  Four days later, on May 22, 2012, the Adaniches received a direct deposit and Fifth Third debited $220 to repay that loan.  This resulted in an APR of approximately 913% for the Early Access Loan.  The monthly account statement issued by Fifth Third to the Adaniches, incorrectly, that the APR for this transaction was 120%.

### Facts as to Plaintiff Janet Fyock

57.     Plaintiff Janet Fyock holds a Fifth Third checking account.

58.     Ms. Fyock has regularly received direct deposits bi-weekly since opening her Early Access account.

59.     Ms. Fyock has taken out approximately twenty-three (23) Early Access Loans since opening her checking account.

60.     Ms. Fyock has always paid back the Early Access Loans within thirty (30) days, and sometimes within one week.  At no point since opening the account has thirty (30) days passed between an Early Access Loan and the next direct deposit.

61.     Since each and every one of Ms. Fyock's Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than thirty (30) days, Ms. Fyock was assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, Ms. Fyock was charged interest rates well in excess of the amount disclosed by Fifth Third.

62.     Below are examples of specific instances where Fifth Third charged Ms. Fyock an APR greater than 120%:

a.      On October 15, 2010, Ms. Fyock borrowed an Early Access Loan in the amount of $550.00 from her Early Access account.  Seven days later, on October 22, 2010, Ms. Fyock received a direct deposit and Fifth Third debited $605.00 to repay this

Early Access Loan. This resulted in an APR of approximately 521% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

b.    On February 2, 2011, Ms. Fyock borrowed an Early Access Loan in the amount of $200.00 from her Early Access account. Fourteen days later, on February 16, 2011, Fyock received a direct deposit and Fifth Third debited $220.00 to repay this Early Access Loan. This resulted in an APR of approximately 260% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

c.    On October 17, 2011, Ms. Fyock borrowed an Early Access Loan in the amount of $200.00 from her Early Access account. Nine days later, on October 26, 2011, Ms. Fyock received a direct deposit and Fifth Third debited $220.00 to repay this Early Access Loan. This resulted in an APR of approximately 405% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for these transactions was 120%.

d.    On December 7, 2011, Ms. Fyock borrowed an Early Access Loan in the amount of $700.00 from her Early Access account. Fourteen days later, on December 21, 2011, Ms. Fyock received a direct deposit and Fifth Third debited $770.00 to repay this Early Access Loan. This resulted in an APR of approximately 260% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

e.    On August 23, 2012, Ms. Fyock borrowed an Early Access Loan in the amount of $400.00 from her Early Access account. Six days later, on August 29, 2012,

Ms. Fyock received a direct deposit and Fifth Third debited $440.00 to repay this Early Access Loan. This resulted in an APR of approximately 608% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

      f.      On December 10, 2012, Ms. Fyock borrowed an Early Access Loan in the amount of $300.00 from her Early Access account. Nine days later, on December 19, 2012, Ms. Fyock received a direct deposit and Fifth Third debited $330.00 to repay this Early Access Loan. This resulted in an APR of approximately 405% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

      g.      On January 3, 2013, Ms. Fyock borrowed an Early Access Loan in the amount of $800.00 from her Early Access account. Thirteen days later, on January 16, 2013, Ms. Fyock received a direct deposit and Fifth Third debited $880.00 to repay this Early Access Loan. This resulted in an APR of approximately 280% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

      h.      On March 13, 2013, Ms. Fyock borrowed an Early Access Loan in the amount of $650.00 from her Early Access account. Fourteen days later, on March 27, 2013, Ms. Fyock received a direct deposit and Fifth Third debited $715.00 to repay this Early Access Loan. This resulted in an APR of approximately 260% charged for this Early Access Loan. The monthly account statement issued by Fifth Third to Ms. Fyock states, incorrectly, that the APR for this transaction was 120%.

### Facts as to Plaintiff Brian Harrison

63.      Plaintiff Brian Harrison formerly held a Fifth Third checking account.

64.     Mr. Harrison regularly received direct deposits biweekly while his Early Access account was open.

65.     Mr. Harrison borrowed approximately ten (10) Early Access Loans from Fifth Third.

66.     Mr. Harrison always paid back the Early Access Loans within two weeks, and sometimes within days, because his paychecks were directly deposited into the account on a biweekly basis.  At no point while his account was open did more than thirty (30) days pass between receipt of an Early Access Loan and the next direct deposit.

67.     Since each and every one of Mr. Harrison's Early Access Loans, including all interest charged relating to same, were paid back in full to Fifth Third in less than thirty (30) days, Mr. Harrison's Early Access Loans carried APRs well in excess of 120%.  As a result, Mr. Harrison was charged interest rates well in excess of the amount disclosed by Fifth Third.

### Facts as to Plaintiff Diana Horn

68.     Plaintiff Diana Horn holds a Fifth Third checking account.

69.     Ms. Horn has regularly received direct deposits since opening her Early Access account.

70.     Ms. Horn has always paid back the Early Access Loans in less than thirty (30) days, and sometimes within one week.  At no point since opening the account has thirty (30) days passed between an Early Access Loan and the next direct deposit.

71.     Since each and every one of Ms. Horn's Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than (30) thirty days, Ms. Horn was assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, Ms. Horn was charged interest rates well in excess of the amount disclosed by Fifth Third.

13

72.     Below are instances where Ms. Horn's Early Access Loans that carried an APR greater than 120%:

a.     On February 11, 2013, Ms. Horn borrowed an Early Access Loan in the amount of $750.  Eleven days later, on February 22, 2013, Ms. Horn received a direct deposit and Fifth Third debited $825.00 to repay this Early Access Loan.  This resulted in an APR of 331%.  The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for this transaction was 120%.

b.     On February 14, 2013, Ms. Horn borrowed an Early Access Loan in the amount of $50.  Seven days later, on February 22, 2013, Ms. Horn received a direct deposit and Fifth Third debited $55.00 to repay this Early Access Loan.  This resulted in an APR of 456%.  The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for this transaction was 120%.

c.     On February 15, 2013, Ms. Horn borrowed an Early Access Loan in the amount of $45.  Six days later, on February 22, 2013, Ms. Horn received a direct deposit and Fifth Third debited $4.50 to repay this Early Access Loan.  This resulted in an APR of 521%.  The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for this transaction was 120%.

d.     On February 19, 2013, Ms. Horn borrowed three Early Access Loans totaling $150.  Three days later, on February 22, 2013, Ms. Horn received a direct deposit and Fifth Third debited $15.00 to repay this Early Access Loan.  This resulted in an APR of 1,216%.  The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for these transactions was 120%.

14

e.      On March 18, 2013, Ms. Horn borrowed an Early Access Loan in the amount of $8.00.  Four days later, on March 22, 2013, Ms. Horn received a direct deposit and Fifth Third debited $0.80 to repay this Early Access Loan.  This resulted in an APR of 912%.   The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for this transaction was 120%.

f.      On April 4, 2013, Ms. Horn borrowed an Early Access Loan in the amount of $15.00.  One day later, on April 5, 2013, Ms. Horn received a direct deposit and Fifth Third debited $1.50 to repay this Early Access Loan.  This resulted in an APR of 3,650%.  The monthly account statement issued by Fifth Third to Ms. Horn states, incorrectly, that the APR for this transaction was 120%.

### Facts as to Plaintiff William Klopfenstein

73.     Plaintiff William Klopfenstein formerly held a Fifth Third checking account.

74.     Mr. Klopfenstein has regularly received direct deposits since opening his Early Access account.

75.     Mr. Klopfenstein took approximately ten (10) Early Access Loans before closing his checking account in or around November of 2011.

76.     Mr. Klopfenstein has always paid back the Early Access Loans in less than thirty (30) days.  At no point since opening the account has thirty (30) days passed between an Early Access Loan and the next direct deposit.

77.     Since each and every one of Mr. Klopfenstein's Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than thirty (30) days, Mr. Klopfenstein was assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, Mr. Klopfenstein was charged interest rates well in excess of the amount disclosed by Fifth Third.

15

78.    Below are examples of Mr. Klopfenstein's Early Access Loans that carried an APR greater than 120%:

a.    On May 31, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $200.  Three days later, on June 3, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $220 to repay that loan.  This resulted in an APR of approximately 1,217% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

b.    On July 19, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $400.  Two days later, on July 21, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $440 to repay that loan.  This resulted in an APR of 1,825% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

c.    On July 26, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $100.  Three days later, on July 29, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $110 to repay that loan.  This resulted in an APR of approximately 1,217% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

d.    On August 1, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $100.  Three days later, on August 4, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $110 to repay that loan.  This resulted in an APR of

approximately 1,217% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

       e.     On August 8, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $250.  Four days later, on August 12, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $275 to repay that loan.  This resulted in an APR of approximately 913% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

       f.     On August 16, 2011, Mr. Klopfenstein borrowed an Early Access Loan in the amount of $150.  Two days later, on August 18, 2011, Mr. Klopfenstein received a direct deposit and Fifth Third debited $165 to repay that loan.  This resulted in an APR of 1,825% charged for the Early Access Loan.  The monthly account statement issued by Fifth Third to Mr. Klopfenstein states, incorrectly, that the APR for this transaction was 120%.

### Facts as to Plaintiffs Lori Laskaris and Daniel Laskaris

79.    Plaintiffs Lori and Daniel Laskaris ("the Laskarises") hold a joint Fifth Third checking account.

80.    The Laskarises have regularly received direct deposits since opening their account.

81.    The Laskarises have taken numerous Early Access Loans since opening their Early Access account.

82.     The Laskarises haves always paid back the Early Access Loans in less than thirty (30) days, and sometimes within one week.  At no point since opening the account has thirty (30) days passed between an Early Access Loan and the next direct deposit.

83.     Since each and every one of the Laskarises' Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than thirty (30) days, the Laskarises were assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, the Laskarises were charged interest rates well in excess of the amount disclosed by Fifth Third.

84.     Below are examples of specific instances where the Laskarises' Early Access Loans carried an APR greater than 120%:

        a.      On April 11, 2011, the Laskarises borrowed an Early Access Loan in the amount of $100.00.  Four days later, the Laskarises received a direct deposit and Fifth Third debited $110.00 from their checking account.  This resulted in an APR of approximately 912% charged for their Early Access Loan.  The monthly account statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

        b.      On May 2, 2011, the Laskarises borrowed an Early Access Loan in the amount of $100.00.  One day later, the Laskarises received a direct deposit and Fifth Third debited $110.00 from their checking account.  This resulted in an APR of approximately 3,650% charged for their Early Access Loan.  The monthly account statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

c.      On October 21, 2011, the Laskarises borrowed an Early Access Loan in the amount of $100.00.  Seven days later, the Laskarises received a direct deposit and Fifth Third debited $110.00 from their checking account.  This resulted in an APR of approximately 521% charged for their Early Access Loan.  The monthly account statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

d.      On January 30, 2012, the Laskarises borrowed an Early Access Loan in the amount of $50.00.  Two days later, the Laskarises received a direct deposit and Fifth Third debited $55.00 from their checking account.  This resulted in an APR of approximately 1,825% charged for their Early Access Loan.  The monthly account statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

e.      On October 22, 2012, the Laskarises borrowed an Early Access Loan in the amount of $200.00.  Four days later, the Laskarises received a direct deposit and Fifth Third debited $220.00 from their checking account.  This resulted in an APR of approximately 912% charged for their Early Access Loan.  The monthly account statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

f.      On January 4, 2013, the Laskarises borrowed an Early Access Loan in the amount of $150.00.  Fourteen days later, the Laskarises received a direct deposit and Fifth Third debited $165.00 from their checking account.  This resulted in an APR of approximately 260% charged for their Early Access Loan.  The monthly account

19

statement issued by Fifth Third to the Laskarises states, incorrectly, that the APR for this transaction was 120%.

## Facts as to Plaintiff Adam McKinney

85.     Plaintiff Adam McKinney holds a Fifth Third checking account.

86.     Mr. McKinney regularly received direct deposits into his checking account.

87.     Mr. McKinney has taken approximately two dozen Early Access Loans.

88.     Mr. McKinney has always paid back the Early Access Loans in less than thirty (30) days.  At no point since opening the account has thirty (30) days passed between an Early Access Loan and the next direct deposit.

89.     Since each and every one of Mr. McKinney's Early Access Loans, including all interest and charges relating to same, were paid back in full to Fifth Third in less than thirty (30) days, Mr. McKinney was assessed APR interest charges well in excess of 120% on every Early Access Loan.  As a result, Mr. McKinney was charged interest rates well in excess of the amount disclosed by Fifth Third.

90.     Below are examples of specific instances where Mr. McKinney's Early Access Loans carried an APR greater than 120%:

        a.      On August 3, 2009, Mr. McKinney borrowed an Early Access Loan in the amount of $300.  Four days later, on August 7, 2009, Mr. McKinney received a direct deposit and Fifth Third debited $330 to repay that loan.  This resulted in an APR of approximately 913% charged for this Early Access loan.  The monthly account statement issued by Fifth Third to Mr. McKinney states, incorrectly, that the APR for this transaction was 120%.

        b.      On September 16, 2009, Mr. McKinney borrowed an Early Access Loan in the amount of $400.  Two days later, on September 18, 2009, Mr. McKinney received

a direct deposit and Fifth Third debited $440 to repay that loan. This resulted in an APR of 1,825% charged for this Early Access loan. The monthly account statement issued by Fifth Third to Mr. McKinney states, incorrectly, that the APR for this transaction was I 20%.

        c.      On November 13, 2010, Mr. McKinney borrowed an Early Access Loan in the amount of $250. Two days later, on November 15, 2010, Mr. McKinney received a direct deposit and Fifth Third debited $275 to repay that loan. This resulted in an APR of 1,825% charged for this Early Access loan. The monthly account statement issued by Fifth Third to Mr. McKinney states, incorrectly, that the APR for this transaction was 120%.

        d.      On January 18, 2011, Mr. McKinney borrowed an Early Access Loan in the amount of $200. Three days later, on January 21, 2011, Mr. McKinney received a direct deposit and Fifth Third debited $220 to repay that loan. This resulted in an APR of approximately 1,217% charged for this Early Access loan. The monthly account statement issued by Fifth Third to Mr. McKinney states, incorrectly, that the APR for this transaction was 120%.

        e.      On January 19, 2012, Mr. McKinney borrowed an Early Access Loan in the amount of $70. One day later, on January 20, 2012, Mr. McKinney received a direct deposit and Fifth Third debited $77 to repay that loan. This resulted in an APR of 3,650% charged for this Early Access loan. The monthly account statement issued by Fifth Third to Mr. McKinney states, incorrectly, that the APR for this transaction was 120%.

## CLASS ALLEGATIONS

### Class Definition

91.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify a class of all Fifth Third customers who used the Early Access Program and repaid the loan within 30 days of receiving such loan.

92.    The proposed Class is defined as:

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, received an Early Access Loan that was repaid in less than 30 days (the "Class").[2]

93.    Excluded from the Class are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, employees and Plaintiffs' counsel.

94.    Plaintiffs reserve the right to modify or amend the definitions of the Class before the Court determines whether certification is appropriate.

95.    Defendant subjected Plaintiffs and Class members to the same unfair, unlawful and deceptive practices and harmed them in the same manner. The conduct described above is the Defendant's standard and undisputed business practice.

### Numerosity

96.    Members of the Class are so numerous that joinder of all members is impracticable. Defendant has numerous branches in various states and it is believed thousands of customers have received Early Access Loans that were paid back within 30 days. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendant.

---

[2] The state-wide classes referenced in Counts Six through Eighteen are the same as the Class, except that the state-wide classes do not include all persons in the United States, but only persons in the state referenced.

## **Commonality**

97.     There are numerous questions of law and fact that are common to Plaintiffs' and Class members' claims.   These common questions predominate over any question that goes particularly to any individual member of the Class.  Among such common questions of law and fact are whether Fifth Third:

a.      Charged excessive interest rates/finance charges to customers using the Early Access Program in violation of federal law and state law.

b.      Misrepresented that the APR for Early Access Loans was 120%.

c.      Fraudulently induced customers into receiving Early Access Loans based on misrepresentations as to the true APR charged for each loan.

d.      Breached the contract with its customers as to the APR that would be charged for each Early Access Loan.

e.      Concealed the true APR it charged on Early Access Loans, both in the Terms & Conditions and on monthly bank statements.

f.      Was unjustly enriched through its Early Access Program's policies and practices.

98.     Other questions of law and fact common to the Class include:

a.      The proper method or methods by which to measure damages.

b.      The injunctive and declaratory relief to which Class members are entitled.

## **Typicality**

99.     Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of the Class because of the similarity, uniformity and common purpose of the unlawful conduct of Fifth Third.  Each Class member has sustained and will continue to sustain damages in the same manner as Plaintiffs as a result of Defendant's wrongful conduct.

23

## Adequacy of Representation

100.    Plaintiffs are adequate Representatives of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs' claims stem from the same course of conduct as the other Class members and Plaintiffs possess no interests antagonistic to those of the other Class members.  Additionally, Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature.

## Requirements of Fed.R.Civ.P. 23(b)(3)

101.    The questions of law or fact common to Plaintiffs' and the other Class Members' claims predominate over any question of law or fact affecting only individual members of the Class.   All claims by Plaintiffs and the other Class members are based on Fifth Third misrepresenting the actual APR that Class members would be charged on their Early Access Loans and Fifth Third charging interest rates in violation of federal law and state law.

102.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

## Superiority

103.    A class action is the superior mechanism to fairly and efficiently adjudicate this controversy because:

a.      Joinder of all Class members would create extreme hardship and inconvenience for the affected customers residing in various states;

b.      Individual claims by Class members are impractical, because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions, yet if the action is not prosecuted, Defendant will continue its wrongful actions;

24

c.      There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

d.      The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

e.      Individual suits would not be cost effective or economically maintainable as individual actions; and

f.      The action is manageable as a class action.

### Requirements of Fed.R.Civ.P. 23(b)(1) & (2)

104.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

105.     Defendant has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### FIRST CLAIM FOR RELIEF

### Violations of the Truth in Lending Act, 15 U.S.C. 1601 *et seq.* and Regulation Z, 12 C.F.R. 226 *et seq.* (On Behalf of the Class)

106.     Plaintiffs incorporate by reference the preceding paragraphs.

107.     Fifth Third disclosed to Plaintiffs and all other members of the Class in the Terms & Conditions and on bank statements that Early Access Loans carried an APR of 120%.

108.     The Truth in Lending Act requires lenders to provide accurate and meaningful disclosures to consumer borrowers, including accurate disclosure of an Annual Percentage Rate for each transaction or loan.

25

109.    Fifth Third did not provide accurate and meaningful APR disclosures to Plaintiffs regarding Early Access Loans.

110.    Fifth Third's APR disclosures were not based on the best information reasonably available to it.

111.    Fifth Third failed to correct the grossly understated APRs on Plaintiffs' and the other Class members' monthly bank statements—even after Early Access Loans had been repaid and the true APR was easily calculable.

112.    Moreover, because of Fifth Third's conduct, consumers were not able to appropriately compare the cost of Early Access Loans to other forms of credit.

113.    Under 15 U.S.C. 1640, Plaintiffs and the other members of the Class are entitled to damages, including statutory damages.

114.    Under 15 U.S.C. 1640, Plaintiffs and the other members of the Class are entitled to payment of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Violations of the Electronic Funds Transfer Act, 15 U.S.C. 1693 *et seq.*
### (On Behalf of the Class)

115.    Plaintiffs incorporate by reference the preceding paragraphs.

116.    Section 913(1) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. 1693(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

117.    Section 1005.10(e)(1) of Regulation E, 12 C.F.R. 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended

under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

118.   In connection with offering Early Access Loans to Plaintiffs and other members of the Class, all of whom are consumers, Fifth Third conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. 1693k(1), and Regulation E, 12 C.F.R. 1005.10(e)(1).

119.   As a direct and proximate result of these violations, Plaintiffs and members of the Class were and continue to be damaged in an amount according to proof, including, without limitation, statutory damages and actual damages, such as payments of interest and other charges collected by Fifth Third.

120.   Pursuant to 15 U.S.C. 1693 *et seq.*, Plaintiffs and members of the Class are entitled to recover actual damages sustained as a result of Fifth Third's violations of EFTA, in an amount to be determined at trial, statutory damages and attorneys' fees and costs in accordance with 15 U.S.C. 1693(m).

## THIRD CLAIM FOR RELIEF

### Violation of 12 U.S.C. 1831(d)
### (On Behalf of the Class)

121.   Plaintiffs incorporate by reference the preceding paragraphs.

122.   12 U.S.C. 1831(d) prohibits state-chartered, federally insured banks, such as Fifth Third, from charging an interest rate greater than the rate allowed by the laws of the State where the bank is located.

123.   Defendant is headquartered in Cincinnati, Ohio.

124.   O.R.C. 1109.20(A) prohibits banks from receiving finance charges and interest in excess of an APR of 25%.

125.     Both under the terms of the Early Access payday loan program and when acting in violation of that agreement, Fifth Third has routinely charged Plaintiffs and members of the Class interest and finance charges well in excess of an APR of 25%.

126.     Fifth Third's Early Access "transaction fee" is interest for the purposes of 12 U.S.C. 1831(d).

127.     Defendant received this usurious interest and/or finance charges in violation of 12 U.S.C. 1831(d).

128.     Pursuant to 12 U.S.C. 1831(d), Plaintiffs and the other Class members are entitled an amount equal to twice the amount of interest paid for the two years preceding the filing of the first complaint in this action.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract
### (On Behalf of the Class)

129.     Plaintiffs incorporate by reference the preceding paragraphs.

130.     Plaintiffs and Fifth Third have contracted for Early Access Loans, as embodied in Fifth Third's Early Access Terms & Conditions and related documentation.

131.     Fifth Third has breached that contract by charging Plaintiffs and the other Class members APRs in excess of 120% on Early Access Loans.

132.     Moreover, Fifth Third has breached the contract by failing to provide an accurate APR summary for Early Access Loans on monthly bank statements.

133.     Plaintiffs and the other members of the Class have performed all, or substantially all, of the obligations imposed on them under the Terms and Conditions.

134.    Plaintiffs and the other members of the Class have sustained damages as a result of Fifth Third Bank's breach in that they were assessed APRs on their Early Access Loans in excess of 120%.

## FIFTH CLAIM FOR RELIEF

### Conversion
### (On Behalf of the Class)

135.    Plaintiffs incorporate by reference the preceding paragraphs.

136.    Fifth Third had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

137.    Fifth Third has wrongfully collected Early Access interest charges from Plaintiffs and the members of the Class and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

138.    Each of the accounts was maintained in Ohio and each unlawful taking thereby occurred in Ohio.

139.    Fifth Third has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

140.    Fifth Third continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

141.    Fifth Third intends to permanently deprive Plaintiffs and members of the Class of these funds.

142.    These funds are properly owned by Plaintiffs and members of the Class, not Fifth Third, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and members of the Class.

143. Plaintiffs and members of the Class are entitled to the immediate possession of these funds.

144. Fifth Third has wrongfully converted these specific and readily identifiable funds.

145. Fifth Third's wrongful conduct is continuing.

146. As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages.

147. By reason of the foregoing, Plaintiffs and members of the Class are entitled to recover from Fifth Third all damages and costs permitted by law, including all amounts that Fifth Third has wrongfully converted.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of an Ohio Class)

148. Ohio Plaintiffs Lyn and Donald Adanich ("Ohio Plaintiffs") incorporate by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

149. Ohio Plaintiffs assert, on behalf of themselves and all similarly situated Ohio residents subject to the banking practices and loan policies described herein (the "Ohio Class"), a common law claim for unjust enrichment.

150. By means of Fifth Third's wrongful conduct alleged herein, Fifth Third knowingly provides banking services to Ohio Plaintiffs and members of the Ohio Class that are unfair, unconscionable and oppressive.

151. Fifth Third knowingly received and retained wrongful benefits and funds from Ohio Plaintiffs and members of the Ohio Class. In so doing, Fifth Third acted with conscious disregard for the rights of Ohio Plaintiffs and members of the Ohio Class.

152.    As a result of Fifth Third's wrongful conduct as alleged herein, Fifth Third Bank has been unjustly enriched at the expense of, and to the detriment of, Ohio Plaintiffs and members of the Ohio Class.

153.    Fifth Third's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

154.    Under the Ohio common law doctrine of unjust enrichment, it is inequitable for Fifth Third to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Early Access fees on Ohio Plaintiffs and members of the Ohio Class in an unfair, unconscionable and oppressive manner.

155.    Fifth Third Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

156.    The financial benefits derived by Fifth Third Bank rightfully belong to Ohio Plaintiffs and members of the Ohio Class.  Fifth Third Bank should be compelled to disgorge in a common fund for the benefit of Ohio Plaintiffs and members of the Ohio Class all wrongful or inequitable proceeds received by them.   A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third Bank traceable to Ohio Plaintiffs and the members of the Ohio Class.

157.    Ohio Plaintiffs and members of the Ohio Class have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of an Illinois Class)

158.    Illinois Plaintiff Janet Fyock incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

159.    Ms. Fyock asserts, on behalf of herself and all similarly situated Illinois residents subject to the banking practices and loan policies described herein (the "Illinois Class"), a common law claim for unjust enrichment.

160.    Defendant was unjustly enriched by charging and collecting from Ms. Fyock and the Illinois Class interest in an amount that was never authorized.

161.    Defendant was unjustly enriched by charging and collecting from Ms. Fyock and the Illinois Class a usurious and/or excessive interest rate.

162.    By unknowingly paying excessive interest and/or APR in an amount that exceeded the amount allowable by law to Defendant, Ms. Fyock and the Illinois Class conferred a benefit on Defendant, which Defendant knowingly accepted despite the fact that they were not entitled to such benefit.

163.    Such acts were, and are, unconscionable.

164.    As a direct and proximate result of Defendant's actions, which constitute unjust enrichment, Ms. Fyock and the Illinois Class members suffered actual damages for which Defendant is liable.

165.    It would be unjust for Defendant to retain the benefits it received from Ms. Fyock and the Illinois Class.

166.    To date, Defendant has retained said benefits.

167.    Ms. Fyock and the Illinois Class have no adequate remedy at law.

168.    Defendant's liability for those damages should be measured by the extent of its unjust enrichment.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of a Tennessee Class)

169.    Tennessee Plaintiff Brian Harrison incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

170.    Harrison asserts, on behalf of himself and all similarly situated Tennessee residents subject to the banking practices and loan policies described herein (the "Tennessee Class"), a common law claim for unjust enrichment.

171.    Defendant was unjustly enriched by charging and collecting from Mr. Harrison and the Tennessee Class interest in an amount that was never authorized.

172.    By unknowingly paying excessive interest and/or APR in an amount that exceeded the amount allowable by law, Mr. Harrison and the Tennessee Class conferred a benefit on Defendant, which Defendant knowingly accepted despite the fact that they were not entitled to such benefit.  Such acts were, and are, unconscionable.

173.    As a direct and proximate result of Defendant's actions, which constitute unjust enrichment, Mr. Harrison and the Tennessee Class suffered actual damages for which Defendant is liable.

174.    It would be unjust for Defendant to retain the benefits it received from Mr. Harrison and the Tennessee Class.

175.    To date, Defendant has retained said benefits.

176.    Mr. Harrison and the Tennessee Class have no adequate remedy at law.

177.    Defendant's liability for those damages should be measured by the extent of its unjust enrichment.

## NINTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of a Kentucky Class)

178.    Kentucky Plaintiff Diana Horn incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

179.    Ms. Horn asserts, on behalf of herself and all similarly situated Kentucky residents subject to the banking practices and loan policies described herein (the "Kentucky Class"), a common law claim for unjust enrichment.

180.    Defendant was unjustly enriched by charging and collecting from Ms. Horn and the Kentucky Class interest in an amount that was never authorized.

181.    Defendant was unjustly enriched by charging and collecting from Ms. Horn and the Kentucky Class a usurious and/or excessive interest rate.

182.    By unknowingly paying excessive interest and/or APR in an amount that exceeded the rate allowable by law, Ms. Horn and the Kentucky Class conferred a benefit on Defendant, which Defendant knowingly accepted despite the fact that they were not entitled to such benefit.  Such acts were, and are, unconscionable.

183.    As a direct and proximate result of Defendant's actions, which constitute unjust enrichment, Ms. Horn and the Kentucky Class suffered actual damages for which Defendant is liable.

184.    It would be unjust for Defendant to retain the benefits it received from Ms. Horn and the Kentucky Class.

185.    To date, Defendant has retained said benefits.

186.    Ms. Horn and the Kentucky Class have no adequate remedy at law.

187.    Defendant's liability for those damages should be measured by the extent of its unjust enrichment.

## TENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of a Florida Class)

188.    Florida Plaintiffs Lori and Daniel Laskaris incorporate by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

189.    The Laskarises assert, on behalf of themselves and all similarly situated Florida residents subject to the banking practices and loan policies described herein (the "Florida Class"), a common law claim for unjust enrichment.

190.    Defendant was unjustly enriched by charging and collecting from the Laskarises and the Florida Class a usurious and/or excessive interest rate.

191.    By unknowingly paying excessive interest and/or APR in an amount that exceeded the amount allowable by law the Laskarises and the Florida Class conferred a benefit on Defendant, which Defendant knowingly accepted despite the fact that they were not entitled to such benefit.  Such acts were, and are, unconscionable.

192.    As a direct and proximate result of Defendant's actions, which constitute unjust enrichment, the Laskarises and the Florida Class suffered actual damages for which Defendant is liable.

193.    It would be unjust for Defendant to retain the benefits it received from the Laskarises and the Florida Class.

194.    To date, Defendant has retained said benefits.

195.    The Laskarises and the Florida Class have no adequate remedy at law.

196.    Defendant's liability for those damages should be measured by the extent of its unjust enrichment.

## ELEVENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of a Michigan Class)

197.    Michigan Plaintiff William Klopfenstein incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

198.    Mr. Klopfenstein asserts, on behalf of himself and all similarly situated Michigan residents subject to the banking practices and loan policies described herein (the "Michigan Class"), a common law claim for unjust enrichment.

199.    By means of Fifth Third Bank's wrongful conduct alleged herein, Fifth Third Bank knowingly provides banking services to Mr. Klopfenstein and members of the Michigan Class that are unfair, unconscionable and oppressive.

200.    Fifth Third Bank knowingly received and retained wrongful benefits and funds from Mr. Klopfenstein and members of the Michigan Class.  In so doing, Fifth Third Bank acted with conscious disregard for the rights of Mr. Klopfenstein and members of the Michigan Class.

201.    As a result of Fifth Third Bank's wrongful conduct as alleged herein, Fifth Third Bank has been unjustly enriched at the expense of, and to the detriment of, Mr. Klopfenstein and members of the Michigan Class.

202.    Fifth Third Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

203.    Under the Michigan common law doctrine of unjust enrichment, it is inequitable for Fifth Third Bank to be permitted to retain the benefits it received, and is still receiving,

without justification, from the imposition of Early Access fees on Mr. Klopfenstein and members of the Michigan Class in an unfair, unconscionable and oppressive manner.

204.    Fifth Third Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

205.    The financial benefits derived by Fifth Third Bank rightfully belong to Mr. Klopfenstein and members of the Michigan Class.  Fifth Third Bank should be compelled to disgorge in a common fund for the benefit of Mr. Klopfenstein and members of the Michigan Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third Bank traceable to Mr. Klopfenstein and members of the Michigan Class.

206.    Mr. Klopfenstein and members of the Michigan Class have no adequate remedy at law.

## TWELFTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of an Indiana Class)

207.    Indiana Plaintiff Adam McKinney incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

208.    Mr. McKinney asserts, on behalf of himself and all similarly situated Indiana residents subject to the banking practices and loan policies described herein (the "Indiana Class"), a common law claim for unjust enrichment.

209.    By means of Fifth Third Bank's wrongful conduct alleged herein, Fifth Third Bank knowingly provides banking services to Mr. McKinney and members of the Indiana Class that are unfair, unconscionable and oppressive.

210.    Fifth Third Bank knowingly received and retained wrongful benefits and funds from Mr. McKinney and members of the Indiana Class.  In so doing, Fifth Third Bank acted with conscious disregard for the rights of Plaintiffs and members of the Indiana Class.

211.    As a result of Fifth Third Bank's wrongful conduct as alleged herein, Fifth Third Bank has been unjustly enriched at the expense of, and to the detriment of, Mr. McKinney and members of the Indiana Class.

212.    Fifth Third Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

213.    Under the Indiana common law doctrine of unjust enrichment, it is inequitable for Fifth Third Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Early Access fees on Mr. McKinney and members of the Indiana Class in an unfair, unconscionable and oppressive manner.

214.    Fifth Third Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

215.    The financial benefits derived by Fifth Third Bank rightfully belong to Mr. McKinney and members of the Indiana Class.  Fifth Third Bank should be compelled to disgorge in a common fund for the benefit of Mr. McKinney and members of the Indiana Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third Bank traceable to Mr. McKinney and members of the Indiana Class.

216.    Mr. McKinney and members of the Indiana Class have no adequate remedy at law.

## THIRTEENTH CLAIM FOR RELIEF

### Fraud
### (On Behalf of an Ohio Class)

217.    Ohio Plaintiffs Lyn and Donald Adanich incorporate by reference the preceding paragraphs.

218.    Ohio Plaintiffs, on behalf of themselves and the Ohio Class, assert a common law claim for fraud.

219.    Defendant represented to each member of the Ohio Class through the Early Access Terms & Conditions and on customers' bank statements that Early Access Loans carry an APR of 120%.

220.    These representations were false.  In fact, Fifth Third Early Access Loans regularly carry APRs of 1,000% or more and, in the case of each and every member of the Ohio Class, carried an APR of in excess of 120%.

221.    Defendant knew that these APR representations were false.

222.    Based upon these representations made by Defendant falsely and with intent to deceive, and in reasonable reliance on them, Ohio Plaintiffs and members of the Ohio Class were charged APRs in excess of that which was represented in Fifth Third's disclosures.

223.    Defendant intended that Ohio Plaintiffs and members of the Ohio Class would rely on its representations and enter into these loan agreements.

224.    Ohio Plaintiffs and members of the Ohio Class reasonably relied on the representation that Early Access Loans would carry a 120% APR.

225.    Defendant's representations were material to inducing the Ohio Plaintiffs and members of the Ohio Class to take the loans and causing Ohio Plaintiffs and members of the

Ohio Class to believe that the Defendant would collect only the APR on each loan that they were actually owed.

226.    As a direct and proximate result of Defendant's fraud, Ohio Plaintiffs and members of the Ohio Class have suffered damages by paying more than they owed.

227.    Defendants engaged in this conduct in the same way to all members of the Ohio Class who reasonably relied thereon in similar fashion.

**FOURTEENTH CLAIM FOR RELIEF**

**Fraud**
**(On Behalf of a Tennessee Class)**

228.    Tennessee Plaintiff Brian Harrison incorporates by reference the preceding paragraphs.

229.    Mr. Harrison, on behalf of himself and the Tennessee Class, asserts a common law claim for fraud.

230.    Defendant represented to each member of the Tennessee Class through the Early Access Terms & Conditions and on the customers' bank statements that Early Access Loans carry an APR of 120%.

231.    These representations were false.  In fact, Fifth Third Early Access Loans regularly carry APRs of 1,000% or more and, in the case of each and every member of the Tennessee Class, carried an APR in excess of 120%

232.    Defendant knew that these representations were false.

233.    Based upon these representations made by Defendant falsely and with intent to deceive, and in reasonable reliance on them, Mr. Harrison and the Tennessee Class were charged APRs in excess of that which was represented in Fifth Third's disclosures.

234. Defendant intended that Mr. Harrison and the Tennessee Class would rely on its representations and enter into these loan agreements.

235. Mr. Harrison and the Tennessee Class reasonably relied on the representation that Early Access Loans would carry a 120% APR.

236. Defendant's representations were material to inducing Mr. Harrison and the Tennessee Class to take the loans and causing Mr. Harrison and the Tennessee Class to believe that the Defendant would collect only the APR on each loan that they were actually owed.

237. As a direct and proximate result of Defendant's fraud, Mr. Harrison and the Tennessee Class have suffered damages by paying more than they owed.

238. Defendants engaged in this conduct in the same way to all members of the Tennessee Class who reasonably relied thereon in similar fashion.

## FIFTEENTH CLAIM FOR RELIEF

### Fraud
### (On Behalf of a Florida Class)

239. Florida Plaintiffs Lori and Daniel Laskaris incorporate by reference the preceding paragraphs.

240. The Laskarises, on behalf of themselves and the Florida Class, assert a common law claim for fraud.

241. Defendant represented to each member of the Florida Class through the Early Access Terms & Conditions and on the customers' bank statements that Early Access Loans carry an APR of 120%.

242. These representations were false. In fact, Fifth Third Early Access Loans regularly carry APRs of 1,000% or more and, in the case of each and every member of the Florida Class, carried an APR in excess of 120%

41

243.    Defendant knew that these representations were false.

244.    Based upon these representations made by Defendant falsely and with intent to deceive, and in reasonable reliance on them, the Laskarises and the Florida Class were charged APRs in excess of that which was represented in Fifth Third's disclosures.

245.    Defendant intended that the Laskarises and the Florida Class would rely on its representations and enter into these loan agreements.

246.    The Laskarises and the Florida Class reasonably relied on the representation that Early Access Loans would carry a 120% APR.

247.    Defendant's representations were material to inducing the Laskarises and the Florida Class to take the loans and causing the Laskarises and the Florida Class to believe that the Defendant would collect only the APR on each loan that they were actually owed.

248.    As a direct and proximate result of Defendant's fraud, the Laskarises and the Florida Class have suffered damages by paying more than they owed.

249.    Defendant engaged in this conduct in the same way to all members of the Florida Class who reasonably relied thereon in similar fashion.

### SIXTEENTH CLAIM FOR RELIEF

#### Fraud
#### (On Behalf of an Indiana Class)

250.    Indiana Plaintiff Adam McKinney incorporates by reference the preceding paragraphs.

251.    Mr. McKinney, on behalf of himself and the Indiana Class, asserts a common law claim for fraud.

252.     Defendant represented to each member of the Indiana Class through the Early Access Terms & Conditions and on the customers' bank statements that Early Access Loans carry an APR of 120%.

253.     These representations were false.  In fact, Fifth Third Early Access Loans regularly carry APRs of 1,000% or more and, in the case of each and every member of the Indiana Class, carried an APR in excess of 120%

254.     Defendant knew that these representations were false.

255.     Based upon these representations made by Defendant falsely and with intent to deceive, and in reasonable reliance on them, Mr. McKinney and the Indiana Class were charged APRs in excess of that which was represented in Fifth Third's disclosures.

256.     Defendant intended that Mr. McKinney and the Indiana Class would rely on its representations and enter into these loan agreements.

257.     Mr. McKinney and the Indiana Class reasonably relied on the representation that Early Access Loans would carry a 120% APR.

258.     Defendant's representations were material to inducing Mr. McKinney and the Indiana Class to take the loans and causing Mr. McKinney and the Indiana Class to believe that the Defendant would collect only the APR on each loan that they were actually owed.

259.     As a direct and proximate result of Defendant's fraud, Mr. McKinney and the Indiana Class have suffered damages by paying more than they owed.

260.     Defendant engaged in this conduct in the same way to all members of the Indiana Class who reasonably relied thereon in similar fashion.

## SEVENTEENTH CLAIM FOR RELIEF

### Violation of 815 ILCS 505/1 *et seq.* – The Illinois Consumer Fraud and Deceptive Business Practice Act (On Behalf of an Illinois Class)

261.    Illinois Plaintiff Janet Fyock incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

262.    Ms. Fyock, on behalf of herself and the Illinois Class, asserts a claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").

263.    Pursuant to IFCA, unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" in the conduct of any trade or commerce is declared unlawful, whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

264.    In connection with the sales, marketing and administration of Fifth Third's Early Access Program to Ms. Fyock and the Illinois Class, Defendant, through its employees, agents and representatives, have violated ICFA by engaging in the following unfair or deceptive acts or practices:

        a.    Willfully charging an APR that exceeds the rate permitted by agreement of the parties.

b.     Willfully charging an APR that exceeds the rate permitted by Illinois statute.

265.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Ms. Fyock and the Illinois Class were damaged.

266.    Ms. Fyock used Defendant's Early Access Loans primarily for personal, family or household purposes.

267.    Ms. Fyock and the Illinois Class are consumers within the meaning of ICFA 815 ILCS 505/1(e).

268.    Defendant at all times acted intentionally, maliciously, willfully, outrageously and knowingly in charging Ms. Fyock and the Illinois Class an APR in excess of 120% on Early Access Loans.  This conduct reflects a deliberate indifference to Ms. Fyock and the Illinois Class members' rights, entitling Ms. Fyock and the Illinois Class to an award of punitive damages.

269.    In the event Ms. Fyock is the prevailing party, Ms. Fyock also seeks reasonable attorneys' fees and costs as provided under the ICFA.

270.    Ms. Fyock and the Illinois Class are entitled to equitable relief, including disgorgement of monies unlawfully collected by Defendant and an injunction prohibiting Defendant from engaging in the same or similar practices described herein in the future.

**EIGHTEENTH CLAIM FOR RELIEF**

**Violation of KRS 367.110 *et seq.* – The Kentucky Consumer Protection Act
(On Behalf of a Kentucky Class)**

271.    Kentucky Plaintiff Diana Horn incorporates by reference the preceding paragraphs, excepting paragraphs which allege the existence of a valid contract.

272.    Ms. Horn, on behalf of herself and the Kentucky Class, asserts for violation of the Kentucky Consumer Protection Act, KRS 367.110, *et seq.* ("KCPA").

45

273.     Under the KCPA Defendant's banking practices, including the marketing of Early Access Loans and the willful charging of interest rates in violation of the law and/or its own consumer contract constitute "trade or commerce" within the meaning of KRS 367.170.

274.     KCPA prohibits unfair, false, misleading, unconscionable or deceptive acts.

275.     Under KCPA, Defendant had a statutory duty to refrain from engaging in deceptive trade practices in connection with advertising for the Early Access Program.

276.     Under KCPA, Defendant breached its duty to refrain from engaging in deceptive trade practices in connection with advertising for the Early Access Program by advertising the APR associated with the Early Access Program as being 120%, when in fact the APR charged exceeded 120%.

277.     Additionally, under KCPA, Defendant breached its duty to refrain from engaging in unfair and/or deceptive trade practices in connection with advertising for the Early Access Program by charging more than allowed under Kentucky law and the law of the United States.

278.     Under KCPA, Defendant had a statutory duty to refrain from engaging in deceptive trade practices in connection with charging interest for the Early Access Program.

279.     Under KCPA, Defendant breached its statutory duty to refrain from engaging in deceptive trade practices in connection with charging interest for the Early Access Program by charging interest that was higher than the rate advertised and/or agreed to.

280.     Each of the aforementioned actions and failures to act of Defendant constitute unfair or unconscionable acts or practices in the conduct of trade or commerce, in violation of the KCPA.

281.     As a result of said deceptive trade practices, Defendant has directly, foreseeably and proximately caused damages to Ms. Horn and the Kentucky Class.  Defendant's policies and

46

practices as alleged herein constitute unfair trade practices under KCPA, as they offend the public policy of the state of Kentucky and the United States, are unethical, oppressive and unscrupulous, and cause substantial injury to Kentucky consumers, including the Ms. Horn and Kentucky Class.

282.    Defendant's practices as alleged are immoral, unethical, oppressive or unscrupulous and cause substantial injury to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand a jury trial on all claims so triable and judgment as follows:

1.    Declaring Fifth Third Bank's Early Access Loan policies,  practices and disclosures to be wrongful, unfair and unconscionable and providing appropriate injunctive relief;

2.    Restitution of all Early Access fees paid to Fifth Third Bank by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.    Disgorgement of the ill-gotten gains derived by Fifth Third Bank from its misconduct;

4.    Actual damages in an amount according to proof;

5.    Punitive and exemplary damages;

6.    Statutory and actual damages sustained as a result of violating TILA, in an amount to be determined at trial, including statutory damages of at least twice the finance charge assessed on Plaintiff and each member of the Classes, and attorney's fees and costs in accordance with 15 U.S.C. 1640;

7.     Statutory and actual damages sustained as a result of violating the EFTA, in an amount to be determined at trial, including all statutory damages authorized under EFTA statutory damages, and attorneys' fees and costs in accordance with 15 U.S.C. 1693;

8.     Damages and penalties for violations of the state consumer protection acts identified herein.

9.     Pre-judgment interest at the maximum rate permitted by applicable law;

10.    Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

11.    Such other relief as this Court deems just and proper.

**_TRIAL BY JURY IS HEREBY DEMANDED._**

Respectfully submitted,

s/ Stuart E. Scott
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
_sscott@spanglaw.com_
_dfrech@spanglaw.com_

HASSAN A. ZAVAREEI  (DC 456161)
JEFFREY KALIEL  (CA 238293)
**TYCKO & ZAVAREEI LLP**
2000 L Street, NW, Suite 808
Washington, DC  20036
(202) 973-0900
(202) 973-095 (FAX)
_hzavareei@tzlegal.com_
_jkaliel@tzlegal.com_

JASON WHITTEMORE
**WAGNER VAUGHAN MCLAUGHLIN**
601 Bayshore Boulevard, Suite 910
Tampa, FL  33606
(800) 360-6439
(813) 225-4010 (FAX)
*jason@wagnerlaw.com*

***Plaintiffs' Interim Class Counsel***

BEN BARNOW
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000
(312) 641-5504 (FAX)
*b.barnow@barnowlaw.com*

PENNY UNKRAUT HENDY
RONALD E. JOHNSON, JR.
**SCHACHTER & HENDY P.S.C.**
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
(859) 578-4444
(859) 578-4440 (FAX)
*phendy@pschachter.com*
*rjohnson@pschachter.com*

STEVEN A. OWINGS
ALEXANDER P. OWINGS
**OWINGS LAW FIRM**
1400 Brookwood Drive
Little Rock, AR 72202
(501) 661-9999
(505) 661-8393 (FAX)
*sowings@owingslawfirm.com*
*aowings@owingslawfirm.com*

T. BRENT WALKER
**CARTER WALKER, PLLC**
2171 West Main, Suite 200
P.O. Box 628
Cabot, AR 72023
(501) 605-1346
*bwalker@walkerlawplc.com*

49

TIFFANY M. YIATRAS
FRANCIS "CASEY" J. FLYNN, JR.
COREY D. SULLIVAN
**CAREY, DANIS & LOWE**
8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 725-7700
(314) 721-0905 (FAX)
*tyiatras@careydanis.com*
*casey@jefflowepc.com*
*csullivan@careydanis.com*

JASPER D. WARD
ALEX C. DAVIS
RANDY RATLIFF
**JONES WARD PLC**
312 S. Fourth Street, 6th Floor
Louisville, KY 40202
(502) 882-6000
(502) 587-2007 (FAX)
*jasper@jonesward.com*
*alex@jonesward.com*
*randy@jonesward.com*

***Other Plaintiffs' Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of October 2013, I electronically filed

the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon

counsel of record by, and may be obtained through, the Court CM/ECF Systems.

s/ Stuart E. Scott
_____
STUART E. SCOTT  (0064834)
DANIEL FRECH  (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*dfrech@spanglaw.com*

***Plaintiffs' Interim Class Counsel***
